UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FACEBOOK, INC., | ) | |
| | ) | Case No. 10-cv-11917-DPW |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PHOENIX MEDIA/COMMUNICATIONS | ) | |
| GROUP, INC., PEOPLE2PEOPLE GROUP, | ) | |
| INC., TELE-PUBLISHING, INC., AND | ) | |
| FNX BROADCASTING LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF DEFENDANTS PHOENIX MEDIA/COMMUNICATIONS
GROUP, INC., PEOPLE2PEOPLE GROUP, INC. AND FNX BROADCASTING LLC
IN SUPPORT OF THEIR MOTION TO DISMISS**

The Complaint of Facebook, Inc. ("Facebook") does not describe within the meaning of *Twombly* and *Iqbal* a plausible claim for relief against Phoenix Media/Communications Group, Inc. ("PMC"), People2People Group, Inc. ("P2P") or FNX Broadcasting LLC ("FNX"). Consequently, the Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Alternatively and independently, the Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(7) because Facebook did not join as defendants three companies that are necessary and indispensable: LifeAcess, Inc. d/b/a LoveAcess.com and Adult Entertainment Broadcasting Network, companies identified by Facebook as infringers "on [PMC's and P2P's] behalf" (Compl. ¶¶ 12, 20), and Cyberdiffusion Inc. d/b/a StreamTheWorld, which streams audio content on the accused FNX Radio Network Music Player.

## FACTS

As "[d]etermining whether a complaint states a plausible claim for relief [is] a context-specific task," *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009), this memorandum first describes the setting in which Facebook brought this action, then turns to the allegations of its flimsy Complaint.

### The Patents Asserted by Facebook

Facebook's Complaint relies on and attaches two patents, neither of which on its face covers the conduct of media companies PMC, P2P and FNX.

### The `157 Patent

Issued in 2001 from an application filed in early 1998, U.S. Patent No. 6,199,157 (the "`157 patent") "relates to a system, method and medium for configuring an item such as a machine, where the item can have a multitude of optional components." Col. 1, L. 6-8.[1] The patent observes that "cars and computers often have numerous available optional components" Col. 2, L. 21-22, as do "toaster ovens." Col. 1, L. 24-25. The detailed description of the invention refers repeatedly to "some type of blueprint" (*e.g.*, Col. 3, L. 64), an option tree, and a control hierarchy that "displays the corresponding physical components . . . of the configured machine." (Col. 4, L. 48-53) (emphasis added). Examples of options include "the buyer chose a car with air conditioning" (Col. 5, L. 47) and selection of hard disk controllers for computers (*e.g.,* Col. 4, L. 18; Col. 5, L. 32; Col. 6, L. 38-42, L. 62-63). The patent includes ten figures, every one of which involves a physical machine.

The words "web site," "network," and "internet" appear nowhere in the `157 patent—neither in the claims themselves nor the description.

---

[1] "Col., L. 6-8" refers to Column 1, Lines 6-8, of the `157 Patent, attached as Exhibit A to the Complaint.

### The `458 Patent

In contrast to the `157 Patent, U.S. Patent No. 6,314,458 (the "`458 patent") does refer to the World Wide Web and web sites, but its focus is database changes. In the words of the patent, "the present invention is generally directed to an apparatus and method for providing flexible communications of <u>data modification</u> of web resources between client browsers, where the web resources are on a server." Col. 2, L. 20-24 (emphasis added).[2]  Claim 1, quoted in Facebook's Complaint (Count Two), states:

> A method for providing flexible communications of <u>data modification</u> of network resources between a plurality of browsers, the method comprising the steps of:
>
> > receiving a request for services from one of the plurality of browsers;
> >
> > performing the request for service;
> >
> > generating a <u>database change</u> notice if database data accessible to the plurality of browsers was <u>modified</u> while performing the request for service; and
> >
> > transmitting the <u>database change</u> notice to a security server for retransmission to the plurality of browsers.

Col. 7, L. 21-31. (Emphasis added).  The detailed description confirms with countless references to "database changes" and similar terms the central role of database modification in the patent. Col. 4-7.

### Facebook's Prior Attempt to Sue PMC and P2P; and Facebook's Exclusion of FNX

On July 12, 2010, Facebook filed counterclaims against Tele-Publishing, Inc. ("TPI") in an action TPI had initiated nine months earlier against Facebook. (Docket No. 120 in TPI

---

[2] The `458 patent is attached as Exhibit B to the Complaint.

Action).[3]  In two of those counterclaims, Facebook named PMC and P2P as defendants.

In Count IV, Facebook alleged that the "Counter-Defendants" (defined as PMC, P2P and

TPI, collectively, without distinction among the three corporations (Counterclaim p. 23))

infringed the '157 patent by the "Advanced Search" feature on two web sites:

http://www.people2people.com and http://www.thephoenix.com.  TPI Action Docket No. 120,

¶¶ 91-96.  Facebook alleged nothing more regarding alleged infringement of the '157 patent.

In Count III, Facebook alleged that "Buddy List" and "Video Chat Rooms" on the web

site http://www.people2people.com infringed the '458 patent.  Again, Facebook alleged nothing

more.  TPI Action Docket No. 120, ¶¶ 85-90.

Facebook did not allege in the counterclaims any infringement by FNX.  Neither FNX, its

website nor FNX Radio Network Music Player were mentioned.

### This Court's Admonition to Facebook

PMC and P2P moved to strike Facebook's counterclaims for infringement of the '157

and '458 patents, arguing the counterclaims were procedurally improper and, in any case, futile

and unlawfully motivated.  TPI Action Docket No. 157.  PMC and P2P incorporated by

reference papers filed by TPI in support of its motion to strike, including the declaration of

PMC's Vice President of Operations, David M. Dinnage, who swore:  "Neither [P2P] nor [PMC]

make, use, offer to sell, or sell the 'Buddy List,' 'Video Chat Rooms,' and 'Advanced Search

Features.'"  TPI Action Docket No. 130, ¶ 10.  Dinnage explained that those features are located

on www.loveaccess.com, owned and operated by LifeAccess.com, which provides P2P a dating

site under contract, and that the company LifeAccess.com "controls the use of and has complete

---

[3] "TPI Action" refers to *Tele-Publishing, Inc. v. Facebook, Inc.*, C.A. No. 1:09-cv-11686-DPW, pending in this Court.

control over the functionality of the dating site, including the 'Buddy List,' 'Video Chat Rooms' and 'Advanced Search' features." *Id.* ¶¶ 4-8.

In opposition to the motions to strike, Facebook declaimed that it had included PMC and P2P as infringement defendants because they are affiliates of TPI, "members of a family of commonly owned shell companies." TPI Action Docket No. 151, p. 10.

At a hearing on October 7, 2010, this Court struck the two infringement counterclaims against PMC and P2P, as well as TPI. The Court told Facebook's counsel that its ruling was "without prejudice to [the infringement claims] being brought as a separate case, "if <u>you think you can</u>." Tr. at 23 (emphasis added).[4] The Court admonished Facebook and its counsel:

> But beware what you ask for, because if I find that this was meretricious, the sanctions under Rule 11 are going to be severe. Fair warning, alright? Got it?
>
> * * *
>
> Faced with similar circumstances, I might engage in an agonizing reappraisal of whether or not it makes sense to bring this action, and I will assume that you will do so and you do so intentionally if you bring the separate action.

Tr. at pp. 23-24.

### Facebook's Second Attempt Against PMC and P2P

A month later, on November 8, 2010, Facebook again took aim at PMC and P2P. In wholly general fashion, Facebook alleged that <u>PMC</u> infringed the `157 patent (1) "through the 'Band Guide,' 'Events' search, and 'Find Restaurants' features available on PMC's website, http://thephoenix.com," (Compl. ¶ 9) and (2) "through the 'Advanced Search' feature accessible from http://thephoenix.com, provided by PMC through http://thephoenix.loveaccess.com/, and through the 'Advanced Movie Search' feature accessible from http://thephoenix.com/adult/blog/adult/pages/video.aspx, provided by PMC through

---

[4] "Tr." refers to the October 7, 2010 transcript, Docket No. 186 in the TPI Action.

http://theater.aebn.net." Compl. ¶10. With the same generality, Facebook alleged that P2P

infringed the `157 patent "through the 'Advanced Search' feature provided by P2P and TPI

through http://people2people.loveaccess.com/login.htm, previously accessible from

http://www.people2people.com." Compl. ¶ 11. Facebook merely recited the language of Claim

1, failing to suggest how the `157 patent—addressed to configuring optional components of a

machine—could be infringed by website search features.

Facebook also alleged that PMC and P2P infringed the `458 patent "through 'Buddy List'

and 'Video Chat Rooms' features accessible from http://thephoenix.com, provided by PMC

through http://thephoenix.loveaccess.com" (Compl., ¶ 18) and "through

http://people2people.loveaccess.com/login.htm, previously accessible from

http://www.people2people.com." Compl. ¶ 19. As with the `157 infringement allegations,

Facebook did nothing more than quote the words of Claim 1 in the `458 patent. Absent from the

Complaint are any facts indicating how the two website "features" infringe.

### Facebook's Omission of Indispensable Parties

In both counts, Facebook identified a company named "LifeAccess.com, Inc. d/b/a

LoveAccess.com" (Compl. ¶ 12) ("LA"). Regarding the `157 patent, Facebook alleged that LA

undertook "infringing actions" and that "LoveAccess.com [LA] . . . provide[s] the infringing

features on Defendants' behalf." Compl. ¶ 12. Facebook asserted LA's identical role with

respect to the `458 patent, contending it "provide[s] the infringing features on Defendants'

behalf." Compl. ¶ 20.

Facebook failed to state the reasons it did not join LA as a party, as required by Fed. R.

Civ. P. 19(c).[5]

---

[5] Rule 19(c) states: "when asserting a claim for relief, a party must state:

Facebook identified another company, Adult Entertainment Broadcasting Network ("AEBN"), which allegedly undertook "infringing actions" and "provide[d] the infringing features on Defendants' behalf." Compl. ¶ 12. As with LA, Facebook did not allege why it did not joint AEBN.

### Facebook's Claim Against FNX

Facebook added FNX, a party it had not previously targeted in its counterclaims in the TPI Action. After alleging that FNX is affiliated with TPI, PMC and P2P (Compl. ¶ 4), Facebook alleged in a single sentence that FNX infringes the `458 patent "through 'the FNX Radio Network Music Player' available on FNX's website, http://fnxradio.com/player/new/." Compl. ¶ 17. Facebook's one-sentence claim against FNX does nothing more than parrot the words of Claim 1 of the `458 patent.

Clicking the accused "FNX Radio Network Music Player" reveals that FNX streams its radio broadcasts onto the World Wide Web. The streaming service is provided by Cyberdiffusion Inc. d/b/a Stream the World ("STW"). Dinnage Dec. ¶ 6.[6] "STREAMTHEWORLD" appears right on the webpage referred to in Facebook's Complaint, ¶ 17.

---

(1)    the name, if known, of any person who is required to be joined if feasible but is not joined; and

(2)    the reasons for not joining that person."

[6] "Dinnage Dec." refers to the Declaration of David Dinnage, signed December 16, 2010, and attached hereto as Exhibit A. As it refers to matters outside the pleadings, the Declaration is submitted only in support of FNX's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(7), but not Fed. R. Civ. P. 12(b)(6).

## ARGUMENT

### I.   THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM FOR RELIEF AGAINST PMC, P2P OR FNX

#### A.   The *Twombly* and *Iqbal* Standard

The Supreme Court's landmark decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) instruct that "a plaintiff armed with nothing more than conclusions" cannot "unlock the doors of discovery." *Id.* at 1950. "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* The pleader must allege "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* at 1949. A complaint that falls short of the plausibility standard must be dismissed under Rule 12(b)(6) "at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (internal citations and quotations omitted).

The plausibility standard applies and is particularly well-suited to patent infringement cases, in light of the tremendous expenses (attorneys' fees, expert witness fees, and otherwise productive business time and focus) required to defend such claims. *Cf. Twombly*, 550 U.S. at 558-59. Facebook cannot take shelter in *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354 (Fed. Cir. 2007), which allowed a *pro se* litigant to proceed with infringement allegations that did little more than identify a patent and defendant's purportedly infringing product. As Judge Stearns recognized earlier this year, *McZeal*, was (1) "decided before the *Iqbal* decision made clear that *Twombly's* heightened pleadings standard applied in all cases, not merely those like *Twombly* that assert antitrust violations" and (2) "motivated by a (perhaps) misplaced indulgence of the pleadings of a *pro se* plaintiff." *Koninklijke Philips Elec. N.V. v. ADS Group*, 694 F.Supp.2d 246, 252 n. 8 (S.D.N.Y. 2010). Several post-*Iqbal* decisions confirm that patent infringement complaints must do more than copy claim language and conclusorily assert infringement.

8

*Bender v. LG Elec. USA, Inc.*, No. C 09-02114 JP (PVT), 2010 WL 889541, at *6 (N.D. Cal.

Mar. 11, 2010) (dismissing complaint under *Twombly* and *Iqbal* because the plaintiff failed to

"do more than allege conclusorily the means by which Defendants are infringing on his [patent]

and provide fair notice to Defendants of the specific infringements alleged."); *Bender v.*

*Motorola, Inc.*, No. C 09-1245 SBA, 2010 WL 726739, at *3 (N.D. Cal. Feb. 26, 2010) ("[T]he

Amended Complaint is too conclusory to provide 'fair notice' of the basis of Plaintiff's claim

that Defendant infringed the [patent].").

      The teachings of *Iqbal* are clear:

> A pleading that offers labels and conclusions or a formulaic
> recitation of the elements of a cause of action will not do. Nor
> does a complaint suffice if it tenders naked assertions devoid of
> further factual enhancement.
>
> A claim has facial plausibility when the plaintiff pleads factual
> content that allows the court to draw the reasonable inference that
> the defendant is liable for the misconduct alleged . . . . Where a
> complaint pleads facts that are merely consistent with a
> defendant's liability, it stops short of the line between possibility
> and plausibility of entitlement to relief.

*Iqbal,* 129 S.Ct. at 1949 (internal citations and quotations omitted).

## B.    Facebook's Complaint Fails Under *Twombly* and *Iqbal*

      Facebook's Complaint does not come close to satisfying the Supreme Court's plausibility

requirement.  Against PMC, P2P and FNX, the Complaint does nothing more than recite the

words of the first claims of the two patents and identify some website features.  That is it.  Apart

from stating that the accused features are available on websites "accessible" through PMC and

P2P websites, there are literally no factual allegations in the Complaint.  Facebook's pleading

does not even achieve the sub-standard "naked assertions devoid of further factual enhancement"

the Supreme Court identified as insufficient. *Iqbal*, 129 S.Ct. at 1937.  For this reason alone, the

Complaint against PMC, P2P and FNX must be dismissed. *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) ("To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the factual allegations in a complaint must possess enough heft to set forth a plausible entitlement to relief.") (quoting *Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1966-67); *Bender v. LG Elec. USA, Inc.*, 2010 WL 889541, at *6; *Bender v. Motorola, Inc.*, 2010 WL 726739, at *3.

Although unnecessary to reach, there are additional reasons that Facebook's Complaint— a second effort against PMC and P2P—fails. Regarding Count One, infringement claims under the `157 patent do not have "facial plausibility" (*Iqbal*, 129 S.Ct. at 1949) in view of the absence of "website," "internet" or any similar term in the patent. On its face, this patent directed to configuring machines (*e.g.,* toaster ovens, automobiles, computers) with optional components, has no application to website features.

Similarly implausible on their face are the conclusory allegations that web searches for restaurants, bands or events would infringe the `458 patent, which is directed to database changes created by a user's request for services. There is no allegation in the Complaint that a person searching for a restaurant, band or event would be modifying a database.

The single allegation against FNX—literally only one sentence in its entirety—is implausible for the additional reason that Facebook did not sue FNX when Facebook targeted other alleged affiliates of TPI.[7]

In short, Facebook has alleged nothing more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 129 S.Ct. at 1949. They

---

[7] Leaving no doubt that FNX, as well as PMC and P2P, are defendants because of their affiliation with TPI—which had the temerity to accuse Facebook in the TPI Action of infringing TPI's patent—the Complaint states: "Facebook reserves the right to amend this Complaint to name additional affiliated entities should discovery reveal that they should be named." Compl. ¶ 21.

"do not suffice." *Id.* As this is Facebook's second bite at the apple, its Complaint should be

dismissed with prejudice. *United States ex rel. Gagne v. City of Worchester*, 565 F.3d 40, 48

(1st Cir. 2009) (affirming lower court's denial of leave to amend complaint a third time based on

"repeated failure to cure the deficiencies in [the] pleadings"); *Advanced Ion Bean Tech. v. Varian*

*Semiconductor Equip. Assocs., Inc.*, 721 F.Supp.2d 62, 83 (D. Mass. 2010) (dismissing claims

with prejudice when plaintiff's second complaint failed to cure pleading deficiencies in first

complaint).

## II.    THE COMPLAINT MUST BE DISMISSED FOR FAILURE TO JOIN REQUIRED PARTIES

### A.    Principles Controlling Required Joinder

In the alternative, if the Court determines that Facebook has sufficiently stated a plausible

claim against PMC, P2P and/or FNX, the Complaint nevertheless must be dismissed because

Facebook has failed to join three indispensable parties: LA, AEBN, and STW (the "absent

parties"). Facebook's claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(7) and 19(b)

for failure to join an indispensable party.

Under Fed. R. Civ. P. 12(b)(7), a complaint must be dismissed if the plaintiff fails to join

a necessary party under Rule 19.[8] Rule 19 sets forth a two-step test for determining whether the

court must dismiss an action for failure to join an indispensable party. The court "must first

determine whether the absent person is a necessary party." *Picciotto v. Cont'l Cas. Co.*, 512

F.3d 9, 16 (1st Cir. 2008). The court must then determine whether joinder is feasible, and if not,

"the court must determine whether, in equity and good conscience, the action should proceed

among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b).

---

[8] On a motion to dismiss under Fed. R. Civ. P. 12(b)(7), "the moving party may present, and the court may consider, evidence outside the pleadings." *Raytheon Co. v. Cont'l Cas. Co.*, 123 F. Supp. 2d 22, 32 (D. Mass. 2000).

**B.     LA, AEBN, and STW Are Necessary Parties**

Under Rule 19(a), a party is necessary and must be joined as a party if:

(A)     in that person's absence, the court cannot accord complete relief among existing parties; or

(B)     that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

   (i)     as a practical matter impair or impede the person's ability to protect the interest; or

   (ii)    leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a). In other words, an absent party is a necessary party if either "the litigation would 'impair or impede' [its] ability to protect [its] interests *or* if the case would leave defendants subject to multiple obligations." *Picciotto*, 512 F.3d at 16 (internal citations omitted). "[P]ersons materially interested in the subject of an action should be joined as parties so that they may be heard and a complete disposition made." *Pujol v. Shearson Am. Exp., Inc.*, 877 F.2d 132, 135 (1st Cir. 1989).

Determining whether an absent party is necessary to the litigation is also a policy decision, requiring considerations of efficiency and fairness. "When applying Rule 19(a), a court will essentially decide whether considerations of efficiency and fairness, growing out of the particular circumstances of the case, require that a particular person be joined as a party." *Pujol*, 877 F.2d at 134. "In proceeding with its inquiry into both necessity and indispensability, a district court should keep in mind the policies that underlie Rule 19, including the public interest in preventing multiple and repetitive litigation, the interest of the present parties in obtaining complete and effective relief in a single action, and the interest of absentees in avoiding the

possible prejudicial effect of deciding the case without them." *Picciotto*, 512 F.3d at 16 (quoting *Acton Co., Inc. of Massachusetts v. Bachman Foods, Inc.*, 668 F.2d 76, 78 (1st Cir. 1982)).

At least three businesses are necessary parties that Facebook failed to include as defendants. Each is discussed below.

## LA

LA provides P2P with an online dating website site under a contract between LA and P2P. Dinnage Dec. ¶ 2. LA warranted that its dating site, network and content do not and will not infringe upon or otherwise violate any intellectual property right of any person. *Id.* ¶ 7.

Facebook alleges that LA's "Advanced Search" product infringes the '157 patent. Compl. ¶¶ 10, 11. Facebook further alleges that LA's "Buddy List" and "Video Chat Rooms" products infringe the '458 patent. Compl. ¶ 19. Facebook also alleges that LA infringes the '157 and '458 patents by providing "infringing features on Defendants' behalf." Compl. ¶¶ 12, 20.

## AEBN

AEBN operates a website (http://theater.aebn.net) accessible from PMC's address http://thephoenix.com/adult/blogs/adult/pages/video.aspx. Compl. ¶ 10. Facebook alleges that AEBN's "Advanced Movie Search" product infringes the '157 patent. Compl. ¶ 10. Facebook further alleges that AEBN infringes the '157 patent by providing "infringing features on Defendants' behalf." Compl. ¶ 12.

## STW

STW provides audio streaming of the radio station WFNX on the website http://fnxradio.com/player/new/. Dinnage Dec. ¶ 6. FNX provides the audio content, and the methods used to stream such content are supplied exclusively by STW. *Id.* STW represented that its streaming services do not and will not infringe upon or otherwise violate any intellectual

property right of any person.  Dinnage Dec. ¶ 7.  Facebook alleges that STW's streaming radio product infringes the '458 patent.  Compl. ¶ 17.

The absent parties are all necessary parties to this action because they have "an interest relating to the subject of the action and [are] so situated that the disposition of the action in [their] absence may ... impair or impede [their] ability to protect that interest." Fed. R. Civ. P. 19(a)(1)(B).

The Complaint alleges that the absent parties' products infringe patents owned by Facebook.  Facebook even admits that it is accusing LA and AEBN of patent infringement, yet fails to name those absent parties as defendants.  Compl. ¶ 12, 20.  The absent parties have an interest in Facebook's allegations that their products are infringing Facebook's patents.  If this Court found that their products were indeed infringing Facebook's patents, this decision would "impair or impede" their ability to protect those interests.  Such an adverse decision would impair their ability to sell their products to other media outlets, would reduce the value of these products, and would jeopardize their ability to continue making and selling these products.

Not joining LA, AEBN and STW also impairs Defendants' ability to defend this action.  The products that Facebook accuses of infringement are owned and provided by the absent parties.  Defendants have no knowledge about the research and development of these products or the design, operation, methods, and processes underlying these products.  The absent parties are in a much better position than Defendants to defend Facebook's claims.  As such, Facebook's failure to name the absent parties as defendants threatens to impair and impede both Defendants' and the absent parties' ability to defend their interests.

Finally, LA and STW are necessary parties because they have indemnified Defendants against any claims of intellectual property infringement by third parties for use of their products.

Dinnage Dec. ¶¶ 3, 7. LA and STW have an interest in the subject matter of this litigation because if the Court found Defendants liable for patent infringement based on LA's or STW's products, LA and STW would be required to indemnify Defendants for any damages. LA and STW would also be at risk of double liability: they would be required to indemnify Defendants' for any damages awarded to Facebook, and Facebook could later sue these absent parties for direct patent infringement under the same facts and circumstances underlying this case.

The absent parties are necessary parties to this case because they have interests in the subject of this action, and proceeding with this case in their absence could impair or impede their ability to protect those interests, and could leave them subject to multiple obligations because of those interests.

## C.      The Absent Parties Cannot Be Joined to This Action

Because LA, AEBN and STW are necessary parties to this action, the Court must determine whether they could feasibly be made parties to this litigation, and if not, whether the Complaint should be dismissed for nonjoinder. Fed. R. Civ. P. 19(b).

LA and AEBN cannot be joined to this action because their contracts with Defendants – which underlie Facebook's claims for patent infringement in this litigation – mandate arbitration of any disputes arising out of those contracts. Dinnage Dec. ¶¶ 3, 5. *Corsi v. Eagle Publ'g, Inc.*, No. 1:07-cv-02004-ESH, 2008 WL 239581 (D.D.C. Jan. 30, 2008) (dismissing case pursuant to 12(b)(7) because necessary and indispensable party could not be joined due to contractual provision that mandated arbitration). Because of these mandatory arbitration clauses, it is not feasible for Facebook to join LA and AEBN to this action.

STW cannot be joined to this action because its contract has a forum selection clause mandating that all claims arising out of that contract must be litigated in the courts of the

province of Quebec or the federal courts of Canada situated therein. Dinnage Dec. ¶ 7. This

forum selection clause precludes joinder of STW in this case.

The absent parties cannot feasibly be made parties to this action.

### D.   The Complaint Should be Dismissed Pursuant to Rule 19(b)

Under Rule 19(b), if a necessary party cannot be joined, the court must determine

"whether in equity and good conscience the action should proceed among the parties before it, or

should be dismissed." Fed. R. Civ. P. 19(b). The rule specifies four factors that the court should

consider when determining whether to dismiss the action:

(1)   the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2)   the extent to which any prejudice could be lessened or avoided by:

(A) protective provisions in the judgment;

(B) shaping the relief; or

(C) other measures;

(3)   whether a judgment rendered in the person's absence would be adequate; and

(4)   whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). The 19(b) factors "implicate many of the same practical judgments

required by the Rule 19(a) determination." *Picciotto*, 512 F.3d at 18. This analysis "involves the

balancing of competing interests and must be steeped in pragmatic considerations." *B.*

*Fernandez & Hnos, Inc. v. Kellogg USA, Inc.*, 516 F.3d 18, 23 (1st Cir. 2008) (internal quotation

marks omitted). Accordingly, the district court's conclusion is reviewed only for abuse of

discretion. *Picciotto*, 512 F.3d at 14.

16

First, as discussed above, a judgment rendered without the absent parties would be prejudicial to their interests in protecting their products from a finding of patent infringement and would require them to indemnify Defendants for any damages without having an opportunity to defend their interests in the litigation.

Second, there are no protective provisions or special relief that the court could tailor that would mitigate this prejudice: a finding of patent infringement would necessarily implicate the absent parties' products, and any damages would necessarily require the absent parties to indemnify the Defendants.

The third requirement, whether a judgment rendered in the non-joined parties' absence would be adequate, implicates "the interest of the courts and the public in complete, consistent, and efficient settlement of controversies." *Picciotto*, 512 F.3d at 18 (quoting *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 111 (1968)). This factor concerns "public state in setting disputes by wholes, whenever possible." *B. Fernandez*, 516 F.3d at 25-26 (quoting *Provident Tradesmen Bank*, 390 U.S. at 111).

Here, a judgment rendered without the absent parties would be neither complete, consistent, nor efficient. Rather, such a judgment would spawn multiple additional litigations: Facebook against the absent parties for patent infringement and the Defendants against the absent parties for indemnification. All of these issues arise out of the same underlying facts. It would be inefficient and a considerable waste of judicial resources to try these cases separately.

Finally, Facebook would have adequate remedies in the event of a dismissal. This case could proceed to arbitration, as required under the arbitration clauses of LA and AEBN's agreements.

For the above reasons, the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(7) and 19(b).

**E.     The Complaint Should Be Dismissed for Failure to Comply with Rule 19(c)**

The Complaint should be dismissed pursuant to Fed. R. Civ. P. 19(c) because Facebook has not adequately pled why these necessary parties were not joined. Rule 19(c) plainly requires a plaintiff to plead the reasons for not joining necessary parties:

> When asserting a claim for relief, a party must state:
>
> (1)     the name, if known, of any person who is required to be joined if feasible but is not joined; and
>
> (2)     the reasons for not joining that person.

Fed. R. Civ. P. 19(c).

Failure to adequately plead under Rule 19(c) can be grounds for dismissal. "Rule 19(c) insures that other necessary parties be informed about the pending action and afforded the opportunity to respond to plaintiff's allegations." *S&S Machinery Corp. v. General Motors Corp.*, No. 93 Civ. 3237 (CSH), 1994 WL 529867, at *4 (S.D.N.Y. Sep. 28, 1994). "[F]ailure to comply with Rule 19(c) may lead the court to dismiss plaintiff's claims." *Id.*

Facebook has not complied with Rule 19(c). In the Complaint, Facebook merely alleges that the Defendants may be liable even if LA and AEBN are the primary infringers. Compl. ¶¶ 12, 22. Facebook has not named LA or AEBN as necessary parties, has not specified whether they can feasibly be joined, and has not pled the reasons for not joining these parties. Accordingly, the Complaint should be dismissed pursuant to Rule 19(c).

## CONCLUSION

For the above reasons, PMC, P2P and FNX respectfully request the Court dismiss with prejudice the Complaint against them.

PHOENIX MEDIA/COMMUNICATIONS GROUP, INC.,
PEOPLE2PEOPLE GROUP, INC. and
FNX BROADCASTING LLC

By their attorneys,


/s/ T. Christopher Donnelly
T. Christopher Donnelly (BBO# 129930)
Kelly A. Hoffman (BBO# 673409)
DONNELLY, CONROY & GELHAAR, LLP
One Beacon Street, 33rd Floor
Boston, Massachusetts 02108
(617) 720-2880

Dated: December 17, 2010

## CERTIFICATE OF SERVICE

I, T. Christopher Donnelly, hereby certify that on this 17th day of December, 2010, I electronically filed the foregoing Memorandum of Defendants Phoenix Media/Communications Group, Inc.,People2People Group, Inc. and FNX Broadcasting LLC in Support of Their Motion to Dismiss with the Clerk of Court using the CM/ECF system, which will send notification of such filing(s) to all counsel of record.

/s/ T. Christopher Donnelly
T. Christopher Donnelly